IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TERI KAY LACASELLA,**

        **Plaintiff,**

    **vs.**                                     Civ. No. 20-760  JFR

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 20)[2] filed March 5, 2021, in connection with Plaintiff's *Motion to Reverse or Remand With Supporting Memorandum,* filed May 28, 2021.  Doc.  25.  Defendant filed a Response on August 27, 2021.  Doc. 29.  Plaintiff filed a Reply on September 30, 2021.  Doc. 32.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

## I.  Background and Procedural Record

Plaintiff Teri Kay Lacasella ("Ms. Lacasella") alleges that she became disabled on November 2, 2016, at the age of fifty-one years and eight months, because of Parkinson's

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 3, 11, 12.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 20), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

Disease, Hepatitis C and post-traumatic stress disorder (PTSD).  Tr. 78-79, 263, 267.

Ms. Lacasella completed her GED in 1998.  Doc. 268.  Ms. Lacasella has worked as a house

painter, a gas station cashier, parking garage attendant, deli clerk and convenience store cashier.

Tr. 269, 294.  Ms. Lacasella stopped working on November 1, 2016, for "other reasons."  Tr.

268.

On February 4, 2017,  Ms. Lacasella protectively filed an application for Supplemental

Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 228-36.  On

June 12, 2017, and July 27, 2017, Ms. Lacasella's application was denied.  Tr. 77, 78-84, 115-

118.  It was denied again at reconsideration on May 9, 2018.  Tr. 92, 94-103, 104-110.  Upon

Ms. Lacasella's request, Administrative Law Judge (ALJ) Lillian Richter held a hearing on

June 25, 2019.  Tr. 32-76.  Ms. Lacasella appeared by videoconference at the hearing with

attorney representative Gary Martone.[3]  *Id*.  On October 30, 2019, ALJ Richter issued an

unfavorable decision.  Tr. 10-23.  On May 28, 2020, the Appeals Council issued its decision

denying Ms. Lacasella's request for review and upholding the ALJ's final decision.  Tr. 1-6.  On

July 27, 2020, Ms. Lacasella timely filed a Complaint seeking judicial review of the

Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.      Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

---

[3] Ms. Lacasella is represented in these proceedings by Attorney Feliz Martone.  Doc. 1.

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b), 416.972(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

   B.   **Standard of Review**

   The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

## III.  <u>Analysis</u>

The ALJ made her decision that Ms. Lacasella was not disabled at step five of the sequential evaluation.  Tr. 21-23.  The ALJ determined that Ms. Lacasella had not engaged in substantial gainful activity since March 13, 2017.[5]  Tr. 16.  She found that Ms. Lacasella had severe impairments of PTSD, generalized anxiety disorder (GAD), dysthymia, major depressive disorder, degenerative disc disease of the lumbar spine with facet arthropathy, sciatica, headaches, and tremor.  *Id.*  The ALJ also found that Ms. Lacasella had nonsevere impairments of mild sleep apnea/daytime somnolence and hepatitis C.  *Id.*  The ALJ determined, however, that Ms. Lacasella's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 16-20.  Accordingly, the ALJ proceeded to step four and found that Ms. Lacasella had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) except she can perform simple routine work, can have occasional interaction with supervisors and coworkers and incidental interaction with members of the public.  She cannot perform assembly line production work.  She can perform work in a workplace with few changes in the routine work setting.  She can occasionally stoop, crouch, and crawl.  She can occasionally balance.  She can never climb ladders, ropes or scaffolds.  She can frequently handle and finger bilaterally.  She should avoid exposure to hazardous machinery.

Tr. 18.  The ALJ determined that Ms. Lacasella had no past relevant work, but that considering her age, education, work experience, and residual functional capacity, there are jobs that exist in

---

[5] That ALJ noted that Ms. Lacasella worked after the application date but this work activity did not rise to the level of substantial gainful activity.  Tr. 16.  The ALJ further noted that "claimant worked near the level of significant gainful activity for at least two quarters during the period of adjudication, which is not consistent with the level of disability she alleges."  *Id.*

significant numbers in the national economy that she can perform.[6]  Tr. 22-23.  The ALJ, therefore, concluded that Ms. Lacasella was not disabled.  Tr. 23-24.

In support of her Motion, Ms. Lacasella argues that (1) the ALJ failed to properly evaluate the RFC; and (2) the ALJ erred by failing to properly analyze Ms. Lacasella's symptoms in accordance with SSR 16-3p.  Doc. 25 at 5-19.

For the reasons discussed below, the Court finds that the ALJ's discussion of the evidence and evaluation of the medical opinion evidence regarding Ms. Lacasella's ability to do work-related mental activities is insufficient and not supported by substantial evidence.  As such, this case required remand.

A.   **Medical Evidence**

1.   **Michael Gzaskow, M.D.**

On March 12, 2018, Ms. Lacasella presented to psychiatrist Michael Gzaskow, M.D., for a mental status examination.  Tr. 350-55.  Ms. Lacasella reported a history of physical and mental health problems.  Tr. 350.  She reported a history of physical and emotional abuse since childhood from which she suffers ongoing PTSD.  *Id.*  Dr. Gzaskow took various histories, *i.e.,* developmental, education, employment, financial, family, medical, social and mental health.  Tr. 351-52.  On mental status exam, Dr. Gzaskow observed, *inter alia,* that Ms. Lacasella's mood was depressed with a sad and flattened affect as she reviewed her struggles with marital discord/potential divorce and depression/anxiety.  Tr. 352.  Dr. Gzaskow noted that Ms. Lacasella's general intellectual function and general fund of knowledge was low average.  Tr.

---

[6] The vocational expert testified that Ms. Lacasella would be able to perform the requirements of representative occupations such as an Office Helper, DOT 239.567-010, which is performed at the light exertional level with 35,000 jobs in national economy; a Housekeeping Cleaner, DOT 323.687-014, which is performed at the light exertional level with 114,000 job in the national economy; and a Document Specialist, DOT 207.685-022, which is performed at the light exertional level with 45,000 job in the national economy.  Tr. 22.

353. Dr. Gzaskow administered a PHQ-9 form which demonstrated a "score of 16/27 and a self-rating of very difficult in terms of potential problems at work, taking care of things at home, or getting along with people." *Id.* Dr. Gzaskow also administered a CES-D scale/NIMH which demonstrated a score of 30/60, *i.e.,* severe depressive symptomology.

Dr. Gzaskow made Axis I diagnoses of PTSD – childhood abuse; general anxiety disorder NOS; and dysthymia. Tr. 353. He assessed that Ms. Lacasella had *moderate limitations* in her ability to understand, remember and carry out instructions; *moderate limitations* in her ability to interact appropriately with supervisors, co-workers and the public; and *severe limitations* in her ability to concentrate, persist, maintain pace and adapt or manage oneself. Tr. 353.

The ALJ accorded little weight to Dr. Gzaskow's assessment of Ms. Lacasella's ability to do work-related mental activities. Tr. 20.

### 2.    Michael Dudelczyk, M.D.

On April 10, 2018, Ms. Lacasella presented to The Life Link in Santa Fe, New Mexico, and saw psychiatrist Michael Dudelczyk, M.D. Tr. 416-22. Ms. Lacasella reported that she was applying for disability. Tr. 420. She reported a bad hip, tremors, chronic migraines, PTSD, ongoing depression, sleep issues and nightmares. *Id.* Dr. Dudelczyk took various histories and conducted a mental status and limited physical exam. Tr. 418. On mental status exam, Dr. Dudelczyk noted, *inter alia*, that Ms. Lacasella was crying, upset, and personable, that her mood was depressed and anxious, and that she had episodic suicidal ideation. *Id.* Dr. Dudelczyk also noted that Ms. Lacasella had abnormal and limited musculoskeletal strength. *Id.*

Dr. Dudelczyk concluded that Ms. Lacasella had significant PTSD, depression and anxiety, and that these mental health impairments in concert with her physical impairments

7

would "make it impossible for her to work in ordinary work situations reliably." Tr. 417. He assessed that it was unlikely Ms. Lacasella's difficulties would improve in the foreseeable future. *Id.* Dr. Dudelczyk initiated a trial of Duloxetine and Prazosin and filled out medical marijuana paperwork. *Id.* Dr. Dudelczyk also indicated that Ms. Lacasella was scheduled to "meet next week to work on her resume and apply for job openings." *Id.*

On May 2, 2018, Dr. Dudelczyk, along with SOAR[7] representative Justin Quick, MPA, prepared a Medical Summary Report on Ms. Lacasella's behalf. Tr. 356-58. The report states as follows:

## FUNCTIONAL INFORMATION

### Activities of Daily Living

Teri Kay struggles to perform tasks or hobbies that she used to enjoy. Her chronic tremors and subsequent migraines often leave her in pain throughout the day. The combination of lower back pain and arthritis in her hips make walking, standing, and sitting for extended periods of time extremely painful. In addition, Ms. Lacasella struggles to interact with people in public due to her mental health impairments. She works part time despite her pain, because of extreme poverty and her need to make ends meet.

### Social Functioning

Due to Teri's ongoing depressive and anxiety symptoms, she struggles to be out in public, and attempts to avoid contact with others whenever possible. Tr. 358

### Ability to Concentrate, Persist and Pace

Ms. Lacasella struggles to manage her depressive and anxiety symptoms, which include impaired ability to focus and concentrate on what she is attempting to do, such as daily tasks or chores. These symptoms are also accompanied by suicidal ideation on occasion.

### Episodes of Decompensation

None reported.

---

[7] SSI/SSDI Outreach, Access, and Recovery.

**Summary**

Overall, Teri Kay Lacasella is not capable to perform work at a sustained level throughout a normal work week. The combination of significant PTSD, Major Depressive Disorder, and Social Anxiety, along with her Degenerative Disc Disease, Degenerative Joint Disease in her Hips, Chronic Migraines, and the initial stages Parkinson's Disease makes it extremely unlikely that Ms. Lacasella could perform work competitively in the workforce, or at a substantially gainful level.

Tr. 357-58.

The ALJ accorded little weight to Dr. Dudelczyk's assessment of Ms. Lacasella's ability to perform work-related mental activities. Tr. 19.

### 3.    Camille Gonzales, FNP

On April 30, 2018, Ms. Lacasella presented to Christus St. Vincent in Santa Fe, New Mexico, and saw family nurse practitioner Camille Gonzales. Tr. 568-72. Ms. Lacasella wanted to establish care. *Id.* Based on Ms. Lacasella's reported complaints and physical exam, FNP Gonzales assessed frequent headaches, elevated hemoglobin, tremor, tobacco abuse, left hip pain, pain in thoracic spine, other chronic pain, lumbago with sciatica, left side, and amenorrhea. Tr. 570. FNP Gonzales planned to refer Ms. Lacasella to neurology for her headaches and tremor, she ordered a left hip x-ray,[8] and prescribed a Nicoderm Patch and Naproxen. Tr. 571-72. FNP Gonzales also administered a Toradol injection to Ms. Lacasella's left gluteus. Tr. 572. FNP Gonzales instructed Ms. Lacasella to follow up in four to six weeks. *Id.*

On April 24, 2019, Ms. Lacasella presented to FNP Gonzales with complaints of mid-back pain.[9] Tr. 517. FNP Gonzales indicated that Ms. Lacasella had been referred for an MRI

---

[8] On June 29, 2018, Ms. Lacasella had a left hip x-ray which demonstrated "[t]he left hip appears radiographically normal for age. There is no fracture, evidence of AVN or stress insufficiency." Tr. 586.

[9] On May 3, 2019, Ms. Lacasella presented for physical therapy due to thoracic spine pain. Tr. 477-503.

which had been denied by insurance.  *Id.*  She also indicated that  Ms. Lacasella had obtained a

sleep study due to frequent headaches and that she had increased Propranolol.  *Id.*

On June 6, 2019, Ms. Lacasella presented to FNP Gonzales for follow up of chronic

mid-back pain and headache with nausea.  Tr. 589-92.  Ms. Lacasella reported that art therapy

had not proved helpful.  Tr. 589.  FNP Gonzales noted that an increase in Propranolol had helped

Ms. Lacasella's tremor and significantly decreased the severity of frequency of headaches.  Tr.

589.  FNP Gonzales assessed shortness of breath, tobacco abuse, mid back pain with no

improvement with physical therapy, acute nonintractable headache, and dysthymia.  Tr. 592-93.

FNP Gonzales referred Ms. Lacasella for an MRI[10] and administered a Toradol injection to treat

her headache.  *Id.*  FNP Gonzales noted that Ms. Lacasella had met with a counselor.[11]

### 4.      Mesa Vista Wellness

#### a.      Dana Dean, LMHC

On January 10, 2019, Ms. Lacasella presented to Mesa Vista Wellness in Santa Fe,

New Mexico, and saw licensed mental health counselor Dana Dean.  Tr. 393-400.  LMHC Dean

conducted a psychological assessment and diagnosed PTSD, chronic moderate, and major

depressive disorder, single episode severe without psychotic features, severe.  Tr. 399.

Ms. Lacasella saw LMHC Dean thirteen more times from January 10, 2019, through

May 1, 2019.  Tr. 365-92.  LMHC Dean consistently noted on mental status exam that

---

[10] On June 18, 2019, Ms. Lacasella had an MRI – Lumbar Spine w/o contrast.  The study showed "[d]egenerative disc disease and facet arthropathy, most pronounced at L4-5 and L5-S1.  With respect to the patient's left lower extremity symptoms, there may be contact of the left L5 nerve root at L4-5 within the left lateral recess.  Please correlate with level of radicular symptoms."  Tr. 402.

[11] On June 6, 2019, Ms. Lacasella saw licensed mental health counselor Ruth Ordonez.  Tr. 593-95.  LMHC Ordonez noted that Ms. Lacasella was positive for depression and that she was nervous/anxious and reported insomnia.  Tr. 594.  LMHC Ordonez assessed Anxiety and recommended that Ms. Lacasella communicate her needs to her current therapist.  Tr. 594-95.  LMHC Ordonez noted that she would refer Ms. Lacasella to Life Link in the event her current therapist was not able to provide adequate services.  *Id.*

Ms. Lacasella was depressed and anxious and had poor insight.  *Id.*  LMHC Dean's diagnoses remained unchanged.

### b.   Christine Schmitt, LMHC

On May 10, 2019, Ms. Lacasella saw licensed medical health counselor Christine Schmitt for art therapy.  Tr. 361-62.  Ms. Lacasella saw LMHC Schmitt once thereafter on May 15, 2019. Tr. 359-60.

### B.   Legal Standard

### 1.   RFC Assessment

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[12]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion.  20

---

[12] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

C.F.R. §§ 404.1527(b), 416.927(b)[13]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC

assessment conflicts with an opinion from a medical source, the ALJ must explain why the

opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC

assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts . . . and nonmedical evidence."  *Wells*, 727 F.3d at 1065

(quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative

discussion describing how the evidence supports each conclusion with citations to specific

medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not

supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir.

2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful

review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

### 2.    Medical Opinion Evidence

The applicable regulations and case law require an ALJ to consider all medical opinions

and discuss the weight assigned to those opinions.[14]  *See* 20 C.F.R. §§ 404.1527(c); *see also*

*Hamlin,* 365 F.3d at 1215 ("[a]n ALJ must evaluate every medical opinion in the record,

although the weight given each opinion will vary according to the relationship between the

disability claimant and the medical professional.").  "An ALJ must also consider a series of

specific factors in determining what weight to give any medical opinion."  *Hamlin*, 365 F.3d at

1215. (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th

---

[13] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

[14] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after
March 27, 2017.  *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01,
2017 WL 168819 (Jan. 18, 2017); (Doc. 19 at 4 n.3.).  However, because Ms. Lacasella filed her claim on February 4,
2017, the previous regulations for evaluating opinion evidence apply to this matter.  *See* 20 C.F.R. 416.927.

Cir. 1995)).[15]   An ALJ's decision need not expressly apply each of the six relevant factors in

deciding what weight to give a medical opinion.  *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th

Cir. 2007).  However, the decision must be "sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons

for that weight."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  The ALJ's

decision for according weight to medical opinions must be supported by substantial evidence.

*Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).  An ALJ is required to give

controlling weight to the opinion of a treating physician if it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence in the record.  *Id.*  Generally the opinion of a treating physician is given

more weight than that of an examining consultant, and the opinion of a non-examining

consultant is given the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.

2004).  "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must

explain the weight he is giving to it."  *Hamlin*, 365 F.3d at 1215.

        Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to

any subsequent reviewers" for the weight that she ultimately assigns the opinion.  *Langley*, 373

F.3d at 1119 (citation omitted).  Failure to do so constitutes legal error.  *See Kerwin v. Astrue*,

244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished).  In addition, "[a]n ALJ is not entitled to

pick and choose through an uncontradicted medical opinion, taking only the parts that are

favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)

(citations omitted).  Instead, an ALJ "must ... explain how any material inconsistencies or

---

[15] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. § 404.1527(c)(2)-(6).

ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996

WL 374184, at *7.  Further, the Commissioner may not rationalize the ALJ's decision post hoc,

and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*,

537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

C. **The ALJ's Discussion of the Evidence and Evaluation of the Medical Opinion Evidence Related to Ms. Lacasella's Ability To Do Work-Related Mental Activities Is Insufficient and Not Supported by Substantial Evidence**

Having found that Ms. Lacasella had medically determinable mental impairments at step

two, the ALJ proceeded at step three to rate the degree of functional limitation resulting from the

impairments with respect to four broad functional areas:  understanding, remembering and

applying information; interacting with others; concentrating, persisting or maintaining pace; and

adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3) (citing 20 C.F.R. pt. 404, subpt. P,

app. 1, Listing 12.00E).  Here, the ALJ rated the functional severity of Ms. Lacasella's mental

impairments in each of these four areas as *moderate*.  Tr. 17.

Next, at step four, the ALJ then generally stated that

[t]urning to her mental impairments, the claimant alleged that her mental symptoms prevented her from working.  However, the medical record indicated only mild findings.  Mental health treatment was limited, consisting only of therapy and some medication (Ex. 5F; Ex. 7F).[16]  The claimant's mental function improved over the course of therapy (Ex. 5F).  Mental status examinations showed some depression and anxiety, but were otherwise normal, indicating normal behavior, speech, and thought process and content, and generally normal memory and concentration (*see, e.g.,* Ex. 3F/3-4; Ex. 5F/40).[17]

Tr. 19.

---

[16] Exhibit 5F is progress notes from Mesa Vista Wellness.  Tr. 359-400.  Exhibit 7F is program notes from Life Link (Dr. Dudelczyk's Psychiatric Evaluation).

[17] Ex. 3F/3-4 is Dr. Gzaskow's mental status exam (Tr. 352-53); Ex. 5F/40 is a mental status exam performed by LMHC Dean (Tr. 398).

As for her evaluation of the medical opinion evidence, the ALJ stated as to

Dr. Dudelczyk's opinion that

> [l]ittle weight is given to the opinions of the claimant's psychiatrist Michael
> Dudelczyk, M.D. . . . He opined that the claimant is unable to work due to her
> physical and mental impairments. His opinion contains no functional assessment
> and is therefore not very helpful in formulating the residual functional capacity.
> His medical summary at Exhibit 4F contains no objective findings to support his
> conclusion and there are no treatment notes in the record that predate this statement.
> To the extent that Dr. Dudelczyk treated the claimant, it appears he saw her only
> one more time in May 2018 and during that visit, he observed her to be upset,
> depressed and anxious, but also noted that she was well groomed, oriented, and
> exhibited good judgment, normal associations, adequate language and adequate
> speech. . . . Like his April 2018 statement, in these treatment notes he opined that
> the claimant's medical and mental health conditions make it impossible for her to
> work and concluded that she would be unlikely to improve. . . . I find this statement
> unpersuasive for the same reason as his April 2018 statement and I additionally
> note that it is at odds with notation on the same page that the claimant was scheduled
> to work on her resume and apply for job openings. . . . I additionally note that in
> both statements, Dr. Dudelczyk relied on the claimant's physical impairments.
> Dr. Dudelczyk is a psychiatrist and the record contains no evidence that he has ever
> treated or assessed the claimant for her physical impairments. Accordingly, his
> conclusions about the impact of claimant's physical limitations to perform work are
> without foundation. Accordingly, I find his opinions of little value.

Tr. 19.

As for Dr. Gzaskow's assessment, the ALJ stated that

> [l]ittle weight is given to the opinion of psychiatric consultative examiner Michael
> Gzaskow, M.D. . . . He opined that the claimant had moderate limitation in her
> ability to understand, remember, and carry out instructions, moderate limitation in
> her ability to interact appropriately with supervisors, coworkers, and the public, and
> severe limitation in her ability to concentrate, persist, maintain pace, and adapt or
> manage oneself. The conclusions are unsupported by examination findings during
> which Dr. Gzaskow noted low average intelligence, but normal mental status
> examination with no deficits in memory and ability to calculate and make
> abstractions. The opinion is also not consistent with the claimant's ability to
> perform work near the level of significant gainful activity, or with medical evidence
> of record indicating the claimant was scheduled to meet to work on resume and
> apply for jobs. . . .

Tr. 20.

Ms. Lacasella first argues that the ALJ, having assessed moderate limitations in all four areas of the B criteria at step three, failed to properly consider the impact of or account for those limitations in the RFC and that a limitation to simple routine work fails to account for them. Doc. 25 at 8-9.  Second, Ms. Lacasella argues that the ALJ failed to properly consider the medical opinion evidence.  *Id.* at 11-16.  She asserts that the ALJ failed to apply the requisite legal analysis when weighing the opinion evidence and that the ALJ's explanations for rejecting the medical opinion evidence are not supported by the record.  *Id.*

The Commissioner contends that the ALJ reasonably evaluated the medical opinion evidence and fashioned an RFC "somewhere in the middle" for legally valid reasons.  Doc. 29 at 13-19.  The Commissioner contends that the non-exertional limitations included in the RFC adequately accommodated Ms. Lacasella's moderate mental limitations and that the ALJ is not required to specifically recite moderate limitations in the RFC when those limitations have been incorporated by stating how she can perform work-related activities.  *Id.*   In this case, the Commissioner contends that limiting Ms. Lacasella to simple routine work, occasional interaction with supervisors and coworkers, incidental interaction with members of the public, and no assembly line work, does just that.  *Id.*  As for the medical opinion evidence, the Commissioner asserts that the ALJ does not have to give deference to examining provider opinions and that the ALJ applied the correct legal standard by rejecting the opinion evidence because it was not supported by the evidence.  *Id.*

The Court finds that the ALJ's discussion of the medical evidence related to Ms. Lacasella's mental impairments and her explanations for rejecting the medical opinion evidence regarding Ms. Lacasella's ability to perform work-related mental activities are insufficient and/or not supported by substantial evidence.  This is error.  *Langley,*  373 F.3d at

1119.  To begin, the ALJ's discussion regarding Ms. Lacasella's mental impairments is inconsistent.  On the one hand the ALJ rated the degree of functional limitation resulting from Ms. Lacasella's mental impairments at step three as *moderate* in each of the four broad categories of functioning, while on the other hand the ALJ concluded at step four that the medical record evidence indicated only *mild* findings.  Tr. 17, 19.  "[A] a moderate impairment is not the same as no impairment at all."  *Haga,* 482 F.3d at 1208.  The ALJ offers no explanation for this inconsistency.  Next, the ALJ concluded that Ms. Lacasella's mental health treatment consisted "only" of therapy and medication[18] and that her mental function improved over the course of therapy.  Tr. 17.  This conclusion is problematic for two reasons.  First, the ALJ fails to explain how mental health treatment consisting of therapy and medication is per se a basis for discounting the severity of and/or the impact on Ms. Lacasella's ability to do work-related mental activities.  "The RFC assessment must be based on all of the relevant evidence in the case record," and the ALJ must describe how the evidence supports her conclusions.  SSR 96-8, 1996 WL 374174, at **5, 7.  And second, the mental health treatment notes the ALJ cites to support her conclusion that Ms. Lacasella's mental function improved over the course of therapy do not reflect improvement.  To the contrary, LMHC Dean's updated Treatment Plan prepared on May 1, 2019, indicates that Ms. Lacasella reported ongoing depression and traumatic stress concerns, ongoing impaired concentration and feelings of worthlessness, persistent fatigue and decreased energy, and persistent sad, depressed and irritable mood.  Tr. 365-66.  Moreover, LMHC Dean's diagnoses and treatment goals were essentially unchanged from when

---

[18] The Commissioner explains that the ALJ was distinguishing that Ms. Lacasella had never had inpatient treatment. Doc. 29 at 14.  See *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted) (explaining that the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision.").

Ms. Lacasella began therapy five months earlier on January 1, 2019.  Compare Tr. 365-68, 393-

400.  Thus, the ALJ's narrative fails to describe how the evidence supports her explanation that

Ms. Lacasella's mental health improved over the course of therapy.  This is error.  *Southard*, 72

F. App'x at 784-85.  Finally, the ALJ's statement that mental status exams showed "some"

depression and anxiety mischaracterizes the evidence which demonstrates that mental healthcare

providers observed and noted depression and anxiety on *every* mental status exam in the

administrative record.[19]  Tr. 353, 359,  361, 363, 369, 371, 373, 375, 377, 379, 381, 383, 385,

387, 389, 391, 394, 418, 593-95.

The ALJ's reasons for rejecting the medical opinion evidence also are not supported by

substantial evidence.[20]  Here, the ALJ rejected treating psychiatrist Dr. Dudelczyk's opinion by

first explaining that Dr. Dudelczyk failed to provide a functional assessment.  Tr. 19.  On May 2,

2018, however, as part of a Medical Summary Report, Dr. Dudelczyk assessed certain functional

limitations, *i.e.,* that Ms. Lacasella's social functioning was impaired due to her ongoing

depressive and anxiety symptoms that she struggled to be out in public and avoided contact with

others whenever possible; and that Ms. Lacasella's ability to concentrate, persist and pace was

impaired due to struggles managing her depressive and anxiety symptoms and occasional

suicidal ideation.  Tr. 357-58.  The ALJ next explained that the Medical Summary Report

---

[19] Elsewhere, the ALJ also stated that Ms. Lacasella engaged in certain activities of daily living such as caring for her dog, driving, shopping, cooking, cleaning and that her ability to engage in these activities of daily living was evidence of her ability to engage in substantial gainful activity.  Tr. 21.  The Tenth Circuit has held that an ALJ's reliance on sporadic and intermittent performance of daily activities to establish that a claimant is capable of engaging in substantial gainful activity is insufficient when a claimant's medical complaints are supported by substantial evidence. *See generally Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that the ability to do minor house chores and drive for brief intervals does not undercut allegations of disabling pain); *see also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (finding that sporadic performance of a few household tasks, working on cars, and driving on occasional recreational trips did not establish that a person was capable of engaging in substantial gainful activity).

[20] According little weight to medical opinion evidence is effectively rejecting it.  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

contained no objective findings and there were no treatment notes in the record that predate the report.  Tr. 19.   Yet Dr. Dudelczyk completed a psychiatric evaluation of Ms. Lacasella on April 10, 2018, approximately three weeks *before* he prepared the Medical Summary Report.  Tr. 417-20.  Therein, Dr. Dudelczyk indicated that he spent sixty minutes with Ms. Lacasella, took various histories, conducted a mental status exam and limited physical exam, and made certain diagnoses.  *Id.*  The ALJ's explanation is, therefore, not supported by the evidence.

Next, as part of his psychiatric evaluation, Dr. Dudelczyk assessed that Ms. Lacasella's significant PTSD, depression, anxiety and social phobia, along with her hip pain and migraines "make it impossible for her to work in ordinary work situations reliably."  Tr. 417.  Dr. Dudelczyk also noted that Ms. Lacasella was "[s]cheduled to meet next week to work on her resume and apply for job openings."  *Id.*  The ALJ rejected Dr. Dudelczyk's assessment explaining that Dr. Dudelczyk improperly relied on Ms. Lacasella's physical impairments to form his assessment and that his assessment was at odds with the notation that Ms. Lacasella was applying for job openings.  Tr. 15.  The Court finds these explanations are insufficient.  To begin, the Court agrees with Ms. Lacasella's argument that the ALJ's rejection of Dr. Dudelczyk's assessment because of the "applying for job" note presumes evidence not in the record, *i.e.,* that Ms. Lacasella would be applying for and obtaining a job without any accommodations or special conditions.  Doc. 25 at 15.  Indeed, the record supports that although Ms. Lacasella was attempting to work "because of extreme poverty," her attempts to do so required significant accommodation.  For instance, Ms. Lacasella reported that when she worked briefly at Walgreens, she was allowed to leave early and take breaks as necessary, was limited to very light duty work, and had her hours reduced from 20 to 14 due to not being able to meet the physical demands required by the job.  Tr. 305.  Ms. Lacasella also testified that after leaving

19

Walgreens, she started a housekeeping job where she worked just three to six days a month.  Tr. 42.  Thus, the ALJ's reliance on Dr. Dudelczyk's note that Ms. Lacasella would be applying for a job when viewed in the context of the record as a whole undermines the ALJ's explanation for rejecting Dr. Dudelczyk's assessment.  Further, in rejecting Dr. Dudelczyk's assessment based on his putative reliance on Ms. Lacasella's physical impairments, the ALJ improperly ignored probative evidence which is improper.  *Carpenter,* 537 F.3d at 1265.

Last, the ALJ's discussion is silent with respect to other factors she is required to consider when weighing medical opinion evidence, *i.e.,* that Dr. Dudelczyk is a treating source, specializing in psychiatry, and that his assessment regarding the impact of Ms. Lacasella's mental impairments on her abilities to do work-related mental activities is consistent with other examining source medical opinion evidence in the record.  *See* 20 C.F.R. § 416.927(c)(2)-(6); *see also Robinson*, 366 F.3d at 1084.

The ALJ's reasons for rejecting Dr. Gzaskow's opinion are similarly flawed.  The ALJ rejected examining consultant Dr. Gzaskow's assessment explaining that it was not supported by examination findings (noting he indicated only low average intelligence), that Ms. Lacasella had recently performed work near the level of significant gainful activity, and that Dr. Gzaskow indicated Ms. Lacasella was planning to apply for jobs.  Tr. 20.  A review of Dr. Gzaskow's examination findings demonstrates that in addition to low average general intellectual functioning, he noted that Ms. Lacasella's mood was depressed and sad and that she had a flattened affect.  Tr. 353.  Dr. Gzaskow also administered certain psychological assessments, *i.e.,* the PHQ-9 that indicated Ms. Lacasella's major depressive disorder was "very difficult in terms of potential problems at work, taking care of things at home, or getting along with other people," and a CES-D scale/NIMH which indicated severe depressive symptoms.  Tr. 353.  The ALJ

failed to discuss this evidence.  *See Clifton,* 79 F.3d at 1009; *see also Robinson*, 366 F.3d at 1083

(a psychological opinion need not be based on solely objective "tests"; those findings "may rest

either on observed signs and symptoms or on psychological tests.") (citing 20 C.F.R. Subpart P,

App. 1 § 12.00(B)).

      Further, as previously discussed, the ALJ's reliance on Ms. Lacasella's attempts to work

as a basis to reject medical opinion evidence are not supported when viewed in the context of the

record as a whole.  Moreover, in light of Ms. Lacasella's unsuccessful work attempts, the ALJ

made no findings on whether Ms. Lacasella would be able to sustain work-like activities for

eight hours a day, five days a week, or an equivalent work schedule. *See Haga,* 482 F.3d at 1208

(claimant's ability to work two to six hours per day as caretaker for her mother did not show she

could hold a job and reversing because evidence did not show that claimant had the RFC to work

"8 hours a day, for 5 days a week, or an equivalent work schedule") (quoting SSR 96–8p, 1996

WL 374184, at *2).  Further, the ALJ also did not discuss whether Ms. Lacasella could hold a

job for a significant period of time in light of her impairments. *See Washington v. Shalala,* 37

F.3d 1437, 1442 (10th Cir.1994) ("A finding that a claimant is able to engage in substantial

gainful activity requires more than a simple determination that the claimant can find employment

and that [she] can physically perform certain jobs; it also requires a determination that the

claimant can *hold* whatever job [she] finds for a significant period of time." (internal quotation

marks omitted)).

      Last, the ALJ's discussion is equally silent with respect to other factors she should have

considered when weighing Dr. Gzaskow's medical opinion evidence, *i.e.,* that Dr. Gzaskow was

an examining source, specializing in psychiatry, and that his assessment regarding the impact of

Ms. Lacasella's mental impairments on her abilities to do work-related mental activities is

consistent with Dr. Dudelczyk's medical opinion evidence.  *See* 20 C.F.R. § 416.927(c)(2)-(6); *see also Robinson*, 366 F.3d at 1084.

For all of the foregoing reasons, the Court finds that the ALJ's discussion of the medical evidence and evaluation of the medical opinion evidence related to Ms. Lacasella's ability to do work-related mental activities is insufficient and not supported by substantial evidence.  This case, therefore, requires remand.

### D.    <u>Remaining Issues</u>

The Court will not address Ms. Lacasella's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV.  <u>Conclusion</u>

For the reasons stated above, Ms. Lacasella's Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support (Doc. 25) is **GRANTED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**